IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ALRENZO BLANDIN,** ) | **CASE NO. 3:08-CV-2172** |
| ) | |
| Petitioner, ) | **JUDGE SARA LIOI** |
| ) | |
| v. ) | |
| ) | **MAGISTRATE JUDGE GREG WHITE** |
| **JESSE WILLIAMS,** ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |

Petitioner, Alrenzo Blandin ("Blandin"), through counsel, challenges the constitutionality of his conviction in the case of *State v. Blandin*, Allen County Court of Common Pleas Case No. CR2005-0350.  Blandin filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on September 10, 2008.  On November 19, 2008, Warden Jesse Williams ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 5.)  Blandin filed a Traverse on December 16, 2008.  (Doc. No. 6.)  This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For reasons set forth in detail below, it is recommended that Blandin's Petition be denied.

## I.  Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell*, 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Blandin's conviction as follows:

> {¶ 2} This matter stems from an investigation, commencing in June 2005 and culminating in August 2005, into Blandin's drug distribution activities. The investigation began when Sergeant Kyle Fittro of the West Central Ohio Crime Taskforce was contacted by a potential confidential informant Michael Tallman, who was incarcerated in the Allen County Jail. Tallman indicated that he had previously sold cocaine for Blandin, but that his relationship with Blandin had

changed. While Tallman was incarcerated, Blandin had or attempted to have sexual intercourse with Tallman's wife. Tallman stated that this caused him to wish to act as a confidential informant against Blandin.

{¶ 3} Tallman began acting as a confidential informant shortly after contacting Sergeant Fittro. They established that Blandin resided at 609 East Kibby Street in Lima, Ohio ("609 East Kibby St.") and that he drove a blue Mercedes in which he often concealed drugs. Through frequent communications between Tallman and Sergeant Fittro, it was decided that they would wait for Blandin to be in possession of a substantial amount of cocaine before initiating the bust. However, there were numerous times during the investigation when Tallman contacted Sergeant Fittro indicating that Blandin was in possession of cocaine.

{¶ 4} The charges against Blandin stemmed from events occurring on the evening of August 3, 2005, and into the early morning hours of August 4, 2005. On August 3, 2005 at approximately 8-8:30p.m. Tallman contacted Sergeant Fittro notifying him that he had just left 609 East Kibby St. and that Blandin had a substantial quantity of cocaine in both the residence and his Mercedes. Tallman also indicated that Blandin would probably be leaving the residence soon, taking an amount of the cocaine with him.

{¶ 5} At this point, Sergeant Fittro began contacting other officers including his supervisor Sergeant Clyde Breitigan who advised him to contact someone to monitor the residence at 609 East Kibby Street. Investigator John Butler was contacted, informed that Blandin had cocaine in his home and vehicle, and instructed to go to Blandin's residence at 609 East Kibby St. to observe the residence and follow the vehicle if it left the residence. Investigator Butler was further instructed to have the vehicle stopped if it left the residence. Once Investigator Butler was dispatched to the residence, Sergeant Fittro and Investigator Johnson began preparing a search warrant for the search of the property at 609 East Kibby Street.

{¶ 6} After Investigator Butler arrived at the house, he observed Blandin leaving in his vehicle. He followed Blandin's vehicle and observed a passenger that Blandin picked up at a gas station enter and leave the vehicle within a short period of time. Blandin then picked up a female passenger. Investigator Butler subsequently contacted a uniformed officer to have Blandin's vehicle pulled over.

{¶ 7} While the female passenger was still in the vehicle, Deputy Douglass pulled Blandin over in a marked cruiser for a turn signal violation. Blandin was later cited for this violation. Once Blandin was pulled over, Deputy Douglas called for a drug sniffing dog. Deputy McPheron arrived approximately fifteen minutes later with K-9 Simba. While Blandin was still in the vehicle, Simba was walked around the car and alerted, indicating the presence of drugs in the vehicle.

{¶ 8} After the dog alerted on the car, Blandin asked to get out of the car, claiming he was hot. At this point Blandin became uncooperative when officers requested permission to search his person and the vehicle, responding "No, Fuck you, Get a warrant. You know, if you want to search my car, get a warrant." (Tr.p.437). Blandin was placed in the back of the cruiser.

{¶ 9} Upon searching the vehicle, officers were unable to find contraband. However, Investigator Butler noticed a lump at the top line of Blandin's pants. Testimony was given at trial that officers had received tips that Blandin often concealed contraband in the crotch area of his pants. Moreover, the female

passenger, who was being detained until a female officer could be summoned to conduct a pat-down, indicated to officers that the Blandin placed the contraband down his pants upon being stopped. After another officer also observed the strange bulge, the officers removed the bulge and discovered a sack of off white substance, later identified as cocaine and green vegetative substance.

{¶ 10} After the traffic stop, Investigator Matthew Treglia was sent to Blandin's residence to perform surveillance on the residence, pending preparation of the warrant. After observing the residence for some time, several women approached the residence, one of whom identified herself as the mother of two young children, also belonging to Blandin. At this point, officers accompanied the women and children into Blandin's residence to obtain their belongings and then left the residence.

{¶ 11} After a warrant was obtained, at approximately 12:30 a.m. on August 4, Investigator Treglia, Investigator Butler, and Sergeant Breitigan entered the home. Inside the residence, officers found digital scales, inositoc, FN 1 a microwave plate with a razor blade and a plastic credit card belonging to Blandin, and a back pack containing cocaine.

> FN1. Testimony was given at trial that inositoc was found in Blandin's residence. It was described as an agent commonly used to dilute cocaine. This Court recognizes that this substance may be more commonly referred to as inositol, which is also used for the dilution of cocaine and methamphetamine.

(Resp. Exh. 16, pp. 2-5.)

## II. Procedural History

### A. Conviction

On August 18, 2005, the Allen County Grand Jury charged Blandin with the following: one count of possession of crack cocaine in violation of Ohio Rev. Code ("O.R.C.") § 2925.11(A)&(C)(4)(b), a felony of the fourth degree; one count of possession of powder cocaine in violation of O.R.C. § 2925.11(A)&(C)(4)(a), a felony of the fifth degree; one count of possession of crack cocaine in violation of O.R.C. § 2925.11(A)&(C)(4)(f), a felony of the first degree; and one count of possession of powder cocaine in violation of O.R.C. § 2925.11(A)&(C)(4)(d), a felony of the second degree.[1] (Resp. Exh. 1.)

---

[1]O.R.C. § 2925.11(C)(4) states, in pertinent part:

If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:

3

Blandin, represented by counsel, filed a motion to suppress. (Resp. Exhs. 2, 3.) After a hearing, the trial court denied the motion. (Resp. Exh. 5.) At Blandin's request, the court permitted him to represent himself at trial with counsel serving in an advisory capacity. (Resp. Exh. 6.) On December 13, 2006, a jury found Blandin guilty of all charges. (Resp. Exh. 7.) He was sentenced the same day as follows: Count One, eighteen months, Count Two, twelve months, Count Three, ten years, and Count Four, eight years. Each count was to be served consecutively to the others, for an aggregate sentence of twenty years and six months. (Resp.

---

> (a) Except as otherwise provided in division (C)(4)(b), (c), (d), (e), or (f) of this section, possession of cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.
>
> (b) If the amount of the drug involved equals or exceeds five grams but is less than twenty-five grams of cocaine that is not crack cocaine or equals or exceeds one gram but is less than five grams of crack cocaine, possession of cocaine is a felony of the fourth degree, and there is a presumption for a prison term for the offense.
>
> * * *
>
> (d) If the amount of the drug involved equals or exceeds one hundred grams but is less than five hundred grams of cocaine that is not crack cocaine or equals or exceeds ten grams but is less than twenty-five grams of crack cocaine, possession of cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree.
>
> * * *
>
> (f) If the amount of the drug involved equals or exceeds one thousand grams of cocaine that is not crack cocaine or equals or exceeds one hundred grams of crack cocaine, possession of cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code.

Exh. 8.)

### B.  Direct Appeal

Blandin, through new counsel, filed a timely Notice of Appeal with the Court of Appeals for the Third Appellate District ("state appellate court"), raising the following assignments of error:

1. The trial court's verdict that defendant was guilty of possession of drugs is against the manifest weight of the evidence.

2. The trial court erred where defendant was sentenced to consecutive terms.

3. Appellee's evidence was legally insufficient to support the verdict of the trial court.

4. The trial court abused its discretion when it permitted the state of Ohio to introduce evidence from a confidential informant through law enforcement, thereby resulting in harmful prejudice to the defendant appellant, and so constituting reversible error, by denying a fair jury and due process of law.

5. The trial court reversible erred [sic] to the prejudice of the defendant/appellant when said court overruled the defendant's motion to suppress the evidence taken from the defendant/appellant in substantial violation of fundamental constitutional right to be secure from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution applicable to the States through the due process clause of the Fourteenth Amendment to the United States Constitution.

(Resp. Exhs. 12 and 13.)  On December 3, 2007, the state appellate court affirmed Blandin's conviction.  (Resp. Exh. 16.)  He filed an application for reconsideration, which was denied January 24, 2008, on grounds that the motion was both untimely and meritless.  (Resp. Exhs. 17, 18.)

On February 4, 2008, Blandin, *pro se*, filed a Notice of Appeal and a motion for delayed appeal to the Ohio Supreme Court.  (Resp. Exhs. 21, 22.)  After the Court granted his motion for delayed appeal, Blandin raised five propositions of law:

1. The trial court's verdict that defendant was guilty of possession of drugs is against the manifest weight of the evidence.

2. Trial court erred where defendant was sentenced to consecutive terms.

> 3. Appellee's evidence was legally insufficient to support the verdict of the trial court.
>
> 4. The trial court abused its discretion when it permitted the state of Ohio to introduce evidence from a confidential informant through law enforcement, thereby resulting in harmful prejudice to the defendant appellant, and so constituting reversible error, by denying a fair jury and due process of law.
>
> 5. The trial court reversible erred [sic] to the prejudice of the defendant/appellant when said court overruled the defendant's motion to suppress the evidence taken from the defendant/appellant in substantial violation of fundamental constitutional right to be secure from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution applicable to the States through the due process clause of the Fourteenth Amendment to the United States Constitution.

(Resp. Exh. 24.) On August 6, 2008, the appeal was dismissed as not involving any substantial constitutional question. (Resp. Exh. 25.)

### C. 26(B) Application to Reopen Appeal

On March 5, 2008, Blandin, *pro se*, filed a motion to reopen his appeal pursuant to Ohio Appellate Rule 26(B) claiming ineffective assistance of appellate counsel and raising six assignments of error. (Resp. Exh. 32.). Blandin supplemented his application with case law to substantiate his arguments. (Resp. Exh. 33.) On June 17, 2008, the state appellate court denied the supplemented application to reopen. (Resp. Exh. 34.) Blandin did not appeal to the Ohio Supreme Court.

### D. Federal Habeas Petition

Blandin, through counsel, filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

> **Ground One:** The State of Ohio has punished Mr. Blandin four (4) times for the same offense, with consecutive sentences for the same offense, in violation of the double jeopardy clause.
>
> **Supporting Facts**: On the exact same date and time, Mr. Blandin simultaneously possessed cocaine in two different forms (some crack and some powder) in two different locations (at his home and in his vehicle). Ohio defines "possession of cocaine" as a single offense, with the difference in the form of cocaine (crack or powder) relevant only for sentencing. Thus, the double jeopardy clause does not allow two sentences for an Ohio offense of possession of cocaine simply because the sentencing provisions distinguish between the forms (crack or powder), as the offense is statutorily one single offense. Similarly, two

>offenses are not created when some of the drugs are in his car and some are in his house at the same time.  This one act of possession of cocaine was split into four counts (powder in car, powder in house, crack in car, crack in house) to yield four sentences run consecutively for the one statutorily-defined offense of possession of cocaine, in violation of the double jeopardy clause.
>
>**Ground Two**: The Ohio Appellate court should have reversed the denial of suppression of a warrantless search of Mr. Blandin and of his house.
>
>**Supporting Facts**: Mr. Blandin's vehicle was stopped without reasonable and articulable suspicion.  The stop was extended in duration beyond that necessary for the original lawful purposes of the stop.  Mr. Blandin's person was searched without arrest and without probable cause for this search.  As a result of discoveries from this search, Mr. Blandin's house was raided, with insufficient cause and with insufficient case [sic] after removal of the tainted facts providing probable cause.  As a result, the warrantless search of his person, and the warranted search of his house tainted by the improper facts from the first constitutional search and insufficient additional facts were unconstitutional.  The fruits of the same should have been suppressed.  The appellate courts applied federal law in addressing these issues unreasonably.

(Doc. No. 1.)

Blandin abandoned Ground Two in his Traverse.  (Doc. No. 6, p. 4.)

### III.  Exhaustion and Procedural Default

**A. Exhaustion**

A petitioner must exhaust his state remedies prior to raising claims in a federal habeas corpus proceeding.  *See* 28 U.S.C. § 2254(b),(c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B. Procedural Default**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default  and prejudice resulting therefrom, or when failing to review the claim would result in a fundamental miscarriage of justice.  *Lundgren v. Mitchell*,

7

440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-2 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28, 102 S.Ct. 1558. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir.1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon

8

federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

### C. Application to Blandin

Blandin maintains that the Double Jeopardy Clause has been violated as he was sentenced to four consecutive terms for a single act. Respondent contends that Blandin procedurally defaulted this claim as he did not present such an argument to the state appellate court. Respondent acknowledges that Blandin made a vague reference to a Double Jeopardy argument on direct appeal when he stated, "[l]astly, the counts should have been ordered to run concurrently. Even though he may be convicted for the multiple counts, the convictions are from only one act or animus and therefore must be run together." (Resp. Exh. 13.) Respondent asserts that this argument to the state appellate court did not implicate a federal constitutional right, and thus was not "fairly presented" as required in federal habeas proceedings. Blandin contends, however, that the state appellate court addressed the issue as one implicating a federal constitutional standard and engaged in a constitutional analysis. (Doc. No. 6, p. 5.)

Blandin did not fairly present his claim as a federal constitutional issue. He did not rely on either federal or state cases employing a constitutional analysis, nor did he allege facts or phrase his claim in terms of constitutional law. *See Newton*, 349 F.3d at 877. He simply stated that the trial court erred when he was sentenced to consecutive terms.

In the instant case, the state appellate court relied on *State v. Wilder*, 2006 WL 1047466, \*2, Case No. 20966 (2nd Dist. Ohio, Apr. 21, 2006). The *Wilder* court directly addressed a similar Double Jeopardy argument as to whether two charges for crack cocaine possession were separate and distinct offenses. *Id*. It affirmed the trial court's finding that Wilder's possession of 27 grams of crack cocaine found in the console of the car was a separate and distinct offense from the possession of one gram of cocaine retrieved from her pocket. *Id*. Even though the state appellate court did not squarely address Blandin's claim as one implicating federal

9

constitutional standards, it engaged in what may be considered a constitutional analysis. Relying on *Wilder*, it interpreted Blandin's claim as raising a federal constitutional Double Jeopardy argument. Blandin subsequently appealed to the Ohio Supreme Court.

The Court need not address the procedural default issue before deciding against granting Blandin's habeas petition. *See* 28 U.S.C. § 2254(b)(2). The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see, e.g., Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *Hudson v. Jones*, 351 F.3d 212, 215-216 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-827 (N.D. Ohio 2001). Therefore, the Court will proceed to address the merits of Blandin's claim.

### IV. Review on the Merits

#### A. Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2009).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"

also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

### B. Application to Blandin

In Ground One, Blandin argues that he was punished four times for the same offense in violation of the Double Jeopardy Clause.

The Double Jeopardy Clause protects against, *inter alia*, multiple punishments for the same offense. In this context, "'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Garrett v. United States*, 471 U.S. 773, 793 (1985)(*quoting Missouri v. Hunter*, 459 U.S. 359, 366 (1983)); *see also Albernaz v. United States*, 450 U.S. 333, 344 (1981). "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." *Garrett*, 471 U.S. at 778. In a single prosecution charging a defendant with violations of different statutes, if the statutes make clear that the legislature intended to impose cumulative punishments, the court is

11

authorized to impose those punishments and the Double Jeopardy Clause is not violated. *Garrett*, 471 U.S. at 779; *see also Missouri v. Hunter*, 459 U.S. at 368-69; *Albernaz*, 450 U.S. at 344 ("Where [the legislature] intended . . . to impose multiple punishments, imposition of such sentences does not violate the Constitution.").

The Supreme Court developed the "same elements" test in *Blockburger v. United States*, 284 U.S. 299 (1932) to determine whether cumulative punishments were intended, holding that:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id*. at 304. The *Blockburger* "same elements" test is a general rule of statutory construction, and as a result, when "a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri*, 459 U.S. 368-69. The Sixth Circuit noted that in a § 2254 review "[a]s long as the state court has concluded that the legislature intended cumulative punishment, this court is bound by that conclusion." *Palmer v. Haviland*, 273 Fed. Appx 480, 486 (6th Cir. 2008) (*citing Banner v. Davis*, 886 F.2d 777, 782 (6th Cir. 1989)).

The state appellate court addressed Blandin's argument as to his sentences as follows:

> This Court has previously recognized that although there is no distinction between powder cocaine and crack cocaine in the schedule definitions, the specific penalty provisions under R.C. 2925.11(C)(4) show that the legislature clearly intended a distinction. *State v. Crisp*, 3rd Dist. No. 1-05-45, 2006-Ohio-2509. Furthermore, the separate charges for two instances of possession of crack cocaine and two instances of possession of powder cocaine were appropriate. In this case, Blandin had a quantity of both powder and crack cocaine on his person when his car was stopped. Alternatively, Blandin had constructive possession of the quantity of both powder and crack cocaine that was found in his home in the subsequent search. Accordingly, this constitutes two separate acts of possession. *See State v. Wilder*, 2nd dist. No. 20996, 2006-Ohio-1975.

(Resp. Exh. 16, ¶ 30; Doc. No. 5-2, p. 240.)

Here, Blandin received consecutive sentences on four separate convictions for possession of crack and powder cocaine. (He possessed both types of cocaine on his person when his

vehicle was stopped and, on the same date, he had constructive possession of both at his home.) The state appellate court concluded that Blandin was sentenced within the statutory range for each offense and then proceeded to address whether his sentences should have run concurrently as the convictions stemmed from the same act.  The court held that "the specific penalty provisions under R.C. 2925.11(C)(4) show that the legislature clearly intended to distinguish crack and powder cocaine. (Resp. Exh. 16, ¶ 30.)  The court relied on *State v. Crisp*, 2006 WL 1381631, 3rd Dist., Case No. 1-05-45, 2006-Ohio-2509, which noted that "[t]here are real differences between the addictive impact of crack cocaine and free-base cocaine, on the one hand, and powder cocaine, on the other.  The differences arise from the different way in which the drug is used." *Crisp*, ¶ 21.  The *Crisp* Court further noted that the legislature intended a distinction between powder and crack cocaine as "harsher penalties for crack cocaine are justified because crack cocaine 'is more potent, because of the way it is ingested, than powder cocaine, and therefore is more dangerous to the user, and to society in general.'" *Id*. at ¶ 22 (*quoting State v. Bryant*, 1998 WL 399863, 2d Dist. No. 16809 (July 17, 1998); *see also State v. Ligon*, 2008 WL 4989070, ¶¶ 35-36, Case No. 4-08-21 (Ohio App. 3 Dist. Nov. 24, 2008).  The state appellate court also considered that Blandin was involved in two separate acts of possession of both the powder and crack cocaine based upon where it was located – under state law he was in possession of both types of cocaine on his person when his car was stopped and he had constructive possession of both in his home.

Even though the state appellate court did not refer to federal case law in its decision, its reasoning was consistent with Supreme Court precedent when it referred to the legislature's clear intent in creating a distinction between possession of powder cocaine and crack cocaine.  This Court must accept the Ohio court's interpretation of the intent of the Ohio legislature.  Blandin's

13

consecutive sentence does not violate the Double Jeopardy Clause. *See, e.g., Gonzales v. Wolfe*, 290 Fed. Appx. 799, 806-807 (6th Cir. 2008); *Palmer*, 273 Fed.Appx. at 483-486.

## V. Conclusion

For the foregoing reasons, it is recommended that Blandin's Petition be denied.

                                                                                       s/ Greg White
                                                          United States Magistrate Judge

Dated: May 21, 2009

## OBJECTIONS

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**